IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG RYAN ESPIGH, | : | CIVIL NO.: 1:19-cv-02221 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| BOROUGH OF LEWISTOWN, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**
November 5, 2021

## I.    Introduction and Procedural History.

On December 27, 2019, the Plaintiff, Craig R. Espigh ("Espigh"), filed a complaint (*doc. 1*) against the Commonwealth of Pennsylvania's Borough of Lewistown (the "Borough"), Lewistown Police Department (the "Department"), David K. Clemens (Lewistown's police chief, who we hereinafter refer to as "Clemens"), Officer Bruce Mann ("Mann"), Officer Patrick Briggs ("Briggs"), John Doe Officer 1, John Doe Officer 2, and John Doe Officer 3.[1]  Espigh's complaint raised four claims stemming from a police chase and car crash.  In Count I, Espigh alleged that the Borough, the Department, and Clemens failed to create, implement, and/or enforce policies concerning vehicular pursuits. *Doc. 1* at

---

[1] Hereinafter we refer to this action's defendants collectively as "Defendants."

¶¶ 53- 2 67.  In Count II, Espigh alleges that all Defendants violated his civil rights in different ways during the police chase and car crash. *Doc*. *1* at ¶¶ 68-73.  In Count III, Espigh alleges that the conduct of all Defendants during the police chase and car crash constituted a state-created danger in violation of Espigh's constitutional rights. *Doc*. *1* at ¶¶ 74-84.  In Count IV, Espigh alleges that all Defendants were negligent during the police chase and car crash. *Doc*. *1* at ¶¶ 85-92.  The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).  This case was accordingly referred to the undersigned. *See Doc*. 17.

On February 28, 2020, Defendants filed a partial motion to dismiss (*doc. 7*) that we granted (*doc. 30*).  Specifically, we dismissed Espigh's complaint, in its entirety, with prejudice as to Defendant Lewistown Police Department. *Id*. Additionally, Counts II and III were dismissed without prejudice as to the Borough, Clemens, Officer Bruce Mann, Officer Patrick Briggs, John Doe Officer 1, John Doe Officer 2, and John Doe Officer 3. *Id.*

For Counts II and III, we concluded that the described conduct did not constitute a seizure, and thus, the Fourth Amendment did not apply to Espigh's second and third claims. *Doc*. *29* at 11-12.  Additionally, for Counts II and III, we found that Espigh did not establish a Fourteenth Amendment substantive due process violation claim because he failed to plead that Defendants had an intent or

2

purpose to cause an unrelated harm, such that it "shocks the conscience." And Count IV was dismissed without prejudice in its entirety because Espigh's allegations indicated that the Defendants acted in the scope of their employment and are shielded by the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA") from liability. *Id* at 14-15. We then granted Espigh leave to file an amended complaint. *Id*.

On May 7, 2021, Espigh filed a second amended complaint against the Borough, Clemens, Officer Bruce Mann, Officer Patrick Briggs, John Doe Officer 1, John Doe Officer 2, and John Doe Officer 3.[2] *Doc. 46*. Defendants filed a motion to dismiss (*doc. 47*) that is the subject of this Memorandum Opinion. Defendants move to dismiss Counts I, II, III, and IV. *Doc. 47*. Espigh filed a "response" (*doc. 51*) and a memorandum of law (*doc. 52*) opposing the Defendants' motion to dismiss. Defendants' motion is ripe for disposition, and, for the following reasons, it is granted.

## II.    Factual Allegations in Espigh's Second Amended Complaint.

According to the complaint, on January 9, 2018, Espigh met with his probation officer at the Mifflin County Probation office as required. *Doc. 46* at ¶

---

[2] On February 26, 2021, Espigh filed an amended complaint (*doc 36*); however, on April 9, 2021, we granted Espigh leave to file a second amended complaint (*doc. 43*).

21.  While there, "it became apparent" that Espigh was going to be handcuffed for an alleged parole violation. *Id.* at ¶ 24.  Espigh claims he was not told he was being placed under arrest nor was he "Mirandized." *Id.* at ¶ 25. "While engaged in the handcuffing process," Espigh alleges that he fell and hit his head, "and an ambulance was called to treat his injury." *Id.* at ¶¶ 27-28.  After EMS transported Espigh from the building, Espigh "determined he had not been arrested, was never placed under arrest and was not handcuffed or restrained in any way," and "left the scene and returned to his home." *Id.* at ¶¶ 30-33.  According to Espigh, his home address was well known to the Lewistown Borough Police Department. *Id.* at ¶ 34.

The following day, Espigh drove to a Dollar Store. *Id.* at ¶ 36.  While sitting in his truck, Espigh noticed individuals approaching his vehicle. *Id.* at ¶ 38. "Plaintiff did not know at this time that the vehicles or operators parked near by which ultimately approached his vehicle were police cars or police officers, only learning later after the chase began and post-hospitalization that the vehicles that approached him were unmarked or darkened police vehicles, difficult to discern at the time of the incident, with Defendants Mann and Briggs operating the same." *Id.* at ¶ 39.  Espigh claims that the officers did not activate their lights or identify themselves as police in any manner upon their initial approach. *Id.* at ¶ 41.  Espigh did not believe there was a warrant out for his arrest nor was he wanted by police. *Id.* at ¶ 42.

As the police approached, Espigh became "concerned" and pulled out of the parking lot, which caused the police to activate their emergency lights and sirens and begin the pursuit. *Id.* at ¶ 44.  Terrified and confused as to why the police were pursuing him, Espigh led police officers on a twelve and a half (12 ½) mile "high speed" chase. *Id.* at ¶¶ 45-48.  "[A]s the chase worsened and became more aggressive," "Espigh failed to negotiate a curve in the roadway, left the road and hit a tree head-on." *Id.* at ¶ 50.  Espigh asserts that he suffered "life-threatening, serious and permanent" injuries including a crushed and fractured nose, multiple facial fractures, a fractured and damaged collarbone and neck, and various gaping lacerations and head wounds. *Id.* at ¶ 55.  Ultimately, Espigh pleaded guilty for an attempted criminal escape from the probation office and claims he did so "out of fear of going to trial and potentially losing which would had led to a much longer incarceration and furthermore based his decision to plead guilty to mitigate his circumstances." *Id.* at ¶¶ 56-57.

### III.   Defendants' 12(b)(6) Motion to Dismiss.

#### A. Standards for a 12(b)(6) Motion to Dismiss.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual

allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id*. at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has

to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief

can be granted, the court "'must accept all facts alleged in the complaint as true

and construe the complaint in the light most favorable to the nonmoving party.'"

*Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.*

*Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to

dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A

court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff

has not alleged." *Associated Gen. Contractors of Cal. v. California State Council*

*of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more

than mere legal labels and conclusions.  Rather, it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim." Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether
they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

### B. Discussion.

#### 1. Defendants' conduct did not shock the conscience.  Thus, Counts II and III are dismissed.[3]

Espigh asserts his second and third claims under the Fourth and Fourteenth

Amendments of the United States Constitution. *See Doc*. *46* at ¶ 101.  A claim

under the Fourteenth Amendment entails judicial analysis of whether a defendant's

conduct has violated substantive due process in a general fashion.  But the Fourth

Amendment provides a more specific "explicit source of constitutional protection

against . . . physically intrusive governmental conduct." *Graham v. Connor*, 490

U.S. 386, 395 (1989).  We therefore "must discern whether a more particularized

amendment"—in this case, the Fourth Amendment—"applies rather than

generalized notions of substantive due process." *Koreny v. Smith*, No. CV 17- 371,

---

[3] We begin with Espigh's second and third claims under the Fourth and Fourteenth
Amendments of the United States Constitution because his first claim may only
succeed if an underlying constitutional violation occurred in either Counts II or III.

2018 WL 1141513, at *5 (W.D. Pa. Mar. 2, 2018) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

After reviewing Espigh's second amended complaint, we find that "[t]he allegations in this police pursuit case are properly analyzed under substantive due process because . . . there was no seizure of [Espigh] by the police susceptible of analysis under the Fourth Amendment." *Id*. at *5. Here, even making all factual inferences in Espigh's favor, as we must at this stage of the proceedings, the officers made a show of authority by approaching Espigh's vehicle, but Espigh did not yield to that authority – on the contrary, he departed at great speed. This does not constitute a seizure. *See California v. Hodari D*., 499 U.S. 621, 626, 111 S. Ct. 1547, 1550, 113 L. Ed. 2d 690 (1991) (holding that "a show of authority as with respect to application of physical force" did not constitute a seizure when the subject "does not yield").

Espigh argues that because he became concerned and scared that the officers were "approaching" his vehicle, the situation is tantamount to a seizure. *Doc*. *52* at 18. We reject this argument, as courts have routinely held that police officers approaching a vehicle does not constitute a seizure under the Fourth Amendment. *United States v. Williams*, 413 F.3d 347 (3d Cir. 2005) ("[m]erely approaching an individual, whether standing or in an automobile, does not constitute a seizure under the Fourth Amendment."); *United States v. Skinner*, 459 Fed. Appx. 180,

183 (3d Cir. 2012) (finding that an unmarked police car that approached a vehicle did not constitute a seizure under the Fourth Amendment). Therefore, the Fourth Amendment does not apply to Espigh's second and third claims.

Regarding the substantive due process analysis, to establish a substantive due process violation under the Fourteenth Amendment, Espigh must demonstrate that Defendants' conduct here was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. Further, given the circumstances of this "high-speed automobile chase aimed at apprehending a suspected offender," Espigh must show "a purpose to cause harm unrelated to the legitimate object of arrest." *Id.* at 836.[4]

---

[4] The United States Court of Appeals for the Third Circuit has articulated "three distinct categories of culpability depending on how much time a police officer has to make a decision." This is a sliding scale that federal trial courts should use in determining whether police conduct shocks the conscience. *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). In the facts as Espigh pleads them, the officers, as in *Haberle v. Troxell*, were making "[s]plitsecond decisions taking place in a hyperpressurized environment"—they were pursuing a parole violator who had escaped from custody just a day earlier. 885 F.3d 170, 177 (3d Cir. 2018). Therefore, the "purpose to cause harm" standard applies. *See Sauers*,

10

Espigh argues that the Defendants demonstrated the requisite intent to cause harm unrelated to the legitimate object of arrest because they knew Espigh would flee if they approached him. *Doc. 52* at 23. Espigh contends that Defendants could have left him alone and contacted him "peacefully" or have probation reach out to him instead of approaching him. *Id.* We reject this argument.

Espigh's argument that the police intended to cause harm unrelated to the legitimate object of arrest because he could have been found at his home is baseless and not supported by any legal precedent. Defendants properly point out that the failure to utilize alternative investigative techniques does not play any role in analyzing the constitutional viability of a police pursuit.

Moreover, common sense dictates that Espigh, who had just the day prior attempted to escape from the probation office, was prone to flee from the police in any location. Indeed, Espigh himself admits "[d]efendants knew by cornering and pursing Plaintiff he would flee." *Id.* Espigh argues that the police should have known he would flee if they approached him in the parking lot but that he would not have attempted to escape had the police attempted to apprehend him at his home. This argument is meritless. Thus, the police had a reasonable belief that Espigh was inclined to abscond from the police, notwithstanding the setting, and

---

903 F.3d at 723 (applying the "purpose to cause harm" standard to an officer "mak[ing] split-second decisions to pursue [a] fleeing suspect[]").

their decision to approach him in the Dollar Store parking lot does not rationally relate to an intent to cause harm unrelated to the legitimate object of arrest.

In sum, Espigh's second amended complaint fails to offer any additional facts from his original complaint that rationally relate to the police officers' intent to cause harm unrelated to the legitimate object of arrest.  Therefore, Espigh's second claim does not establish a substantive due process violation under the Fourteenth Amendment. *See Koreny v. Smith*, No. CV 17-371, 2018 WL 1141513, at *7 (W.D. Pa. Mar. 2, 2018); *compare with Pinkston v. City of Jersey City*, No. 219CV13285BRMJAD, 2020 WL 4251485, at *9 (D.N.J. July 24, 2020).  We will thus dismiss Espigh's second claim in its entirety.

The deficiency in Espigh's second claim afflicts Espigh's third claim as well.  In Espigh's third claim, he asserts that Defendants' conduct rendered Espigh susceptible to a "state-created danger." *See Doc*. *46* at ¶ 70.  To assert a proper state-created danger claim, a plaintiff must plead that "the state actor acted with a degree of culpability that shocks the conscience." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018).  As above, Espigh has not pleaded that Defendants' conduct "shocks the conscience," because he fails to allege any facts that indicate Defendants had an intent or purpose to cause an unrelated harm.  We will thus dismiss Espigh's third claim in its entirety.

**2. There is no underlying Fourth or Fourteenth Amendment violation. Thus, Count I is dismissed.**

In Espigh's first claim, he asserts that that the Borough and Clemens failed to create, implement, and/or enforce policies concerning vehicular pursuits. *Doc. 46* at 85. Espigh claims that this failure enabled the police officers to act with deliberate indifference to his constitutional rights *Id*. In *Bielevicz*, the Third Circuit held that:

> [P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action. A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered. To establish the necessary causation, a plaintiff must demonstrate a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue.

*Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (internal citations and quotation marks omitted).

Here, we have already found that Espigh has failed to establish a constitutional violation claim against any of the officer Defendants. Without any underlying deprivation of a constitutional right, there can be no municipal liability. We will thus dismiss Espigh's first claim in its entirety.[5]

---

[5] Defendants argue that Espigh has failed to state a claim for supervisory or *Monell* liability. As the discussion above makes clear, we have found an independent reason for dismissal, and therefore, for reasons of judicial economy, we will not analyze the existence of *Monell* liability.

13

### 3. Defendants are immune from state tort liability.  Thus, Count IV is dismissed.

In Espigh's fourth claim, he asserts that certain Defendants were negligent. He only asserts this fourth claim against Clemens and the individual police officers who Espigh alleges were involved in the police chase and car crash.  *See Doc. 46* at ¶ 120-121.  But "[u]nder the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), police officers are immune from state tort liability for acts within the scope of their employment except when the alleged conduct involves 'a crime, actual fraud, actual malice or willful misconduct.'" *Brummell v. City of Harrisburg*, No. 1:09-CV-01816, 2010 WL 3896382, at *3 (M.D. Pa. Sept. 30, 2010) (quoting 42 PA. CONS. STAT. § 8550).

As previously discussed, Espigh has not alleged facts that reasonably indicate the Defendants intended to cause any harm unrelated to the legitimate object of arrest.  Thus, Espigh has failed to plead facts that indicate a crime, actual fraud, actual malice, or willful misconduct.  Further, by its very nature, a negligence claim such as Espigh's Count IV does not speak to conduct that involves "a crime, actual fraud, actual malice or willful misconduct." *See Kobrick v. Stevens*, No. CIV.A. 3:13-2865, 2014 WL 4914186, at *14 (M.D. Pa. Sept. 30, 2014) (holding that "[g]iven that [requirements of 'actual malice' or 'willful misconduct'] necessarily require a higher level of fault than mere negligence, the

plaintiffs' negli[g]ence claim fails as a matter of law"). As the allegations in Espigh's complaint indicate that these Defendants appear to have been acting in the scope of their employment, the PPSTCA shields these Defendants from liability. And we will accordingly dismiss Espigh's fourth claim in its entirety.

### 4. We will not grant Espigh further leave to amend his amended complaint.

"The court should freely give leave to amend when justice so requires," FED. R. CIV. P. 15(a)(2), and "the pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013). "This liberal amendment regime helps effectuate the 'general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (quoting *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987)). "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

Here, granting Espigh further leave to amend would be futile with respect to the deficiencies that we have identified in Counts I, II, III, and IV. We previously

ordered Espigh to plead facts that indicate an intent to harm unrelated to the legitimate object of arrest.  Espigh has failed to do so.  Because Espigh has failed to plead facts that lead to a reasonable inference of intent to harm on the part of the Defendants, and his four Counts all fail without such a pleading, further leave to amend would be futile.  Thus, Espigh's four Counts will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## IV.    Conclusion.

Defendants motion to dismiss (*doc. 47*) is granted.  Espigh's amended complaint is dismissed with prejudice as asserted against Defendants for failure to state a claim upon which relief can be granted.  An appropriate order will be issued.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge